IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TEXASLDPC INC.,                           )
                                          )
                    Plaintiff,            )
                                          )
          v.                              )      C.A. No. 18-1966 (RGA)
                                          )
BROADCOM  INC.,  LSI  CORPORATION         )
and AVAGO TECHNOLOGIES U.S., INC.         )
                                          )
                    Defendants.           )


**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS FOR LACK OF STANDING UNDER FED. R. CIV. P 12(B)(1)
AND FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(B)(6)**


MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Jennifer A. Ward (#6476)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
jward@mnat.com

*Attorneys for Defendants*

OF COUNSEL:

Steven J. Rizzi
Ramy E. Hanna (DE # 5494)
KING & SPALDING LLP
1185 Avenue of the Americas, 35th Floor
New York, NY  10036
(212) 556-2100

March 1, 2019

## TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................1

II.    NATURE AND STAGE OF THE PROCEEDINGS ...........................................2

III.   STATEMENT OF FACTS ...................................................................................3

      A.    Kiran Gunnam's Work for LSI and Connection to TexasLDPC .............................3

      B.    Infringement Allegations in the Complaint ...........................................5

           1.    Infringement Allegations Against the Accused Hard Disk Controller Products .........................................................................5

           2.    Infringement Allegations Against the Accused SandForce Products ..........6

           3.    Infringement Allegations Against the Accused Densbits Products ............6

           4.    Infringement Allegations Against the Accused Wi-Fi Products.................7

IV.   LEGAL STANDARDS ........................................................................................8

      A.    Dismissal for Lack of Standing Under Fed. R. Civ. P. 12(b)(1) ............................8

      B.    Dismissal for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6) ..................9

      C.    Copyright Statute of Limitations - 17 U.S.C. § 507 ............................................10

V.    ARGUMENT......................................................................................................11

      A.    Plaintiff Does Not Have Standing to Bring the Patent Infringement Claims ........11

           1.    The Facts Pled in the Complaint Do Not Support Standing .....................11

           2.    The Public Record of the Asserted Patents Contradicts Plaintiff's Assertions Regarding Standing.................................................................12

           3.    In the Alternative, Limited Discovery to Determine Whether Plaintiff Has Standing Is Appropriate.......................................................13

      B.    The Complaint Fails to State a Claim for Patent Infringement ............................14

      C.    The Complaint Fails to State a Plausible Claim for Copyright Infringement........17

           1.    The Complaint Fails to Plead an Adequate Factual Basis for Copyright Infringement ..........................................................................17

i

2.      The Complaint Does Not Allege Copyright Infringement by the
        Accused SandForce, Densbits, and Wi-Fi Products .................................19

VI.     CONCLUSION..........................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Diamedix Corp.*,
   47 F.3d 1128 (Fed. Cir. 1995).........................................................................11, 12

*Abraxis Bioscience, Inc. v. Navinta LLC*,
   625 F.3d 1359 (Fed. Cir. 2010)...............................................................................8

*ACE Am. Ins. Co. v. Guerriero*,
   738 F. App'x 72 (3d Cir. 2018) ...........................................................................8, 13

*Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.*,
   604 F.3d 1354 (Fed. Cir. 2010).......................................................................9, 11, 14

*Artrip v. Ball Corp.*,
   735 F. App'x 708 (Fed. Cir. 2018) ........................................................................10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...............................................................................................9

*Dam Things from Denmark v. Russ Berrie & Co., Inc.*,
   290 F.3d 548 (3d Cir. 2002)..................................................................................19

*Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*,
   307 F.3d 197 (3d Cir. 2002)..................................................................................10

*EMC Corp. v. Pure Storage, Inc.*,
   165 F. Supp. 3d 170 (D. Del. 2016).........................................................................8

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009)....................................................................................9

*Greenberg v. Scholastic, Inc.*,
   C.A. No. 16-6353, 2018 WL 1532850 (E.D. Pa. Mar. 28, 2018)...........................18

*Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*,
   248 F.3d 1333 (Fed. Cir. 2001)................................................................................9

*Lennon v. Seaman*,
   No. 99-CV-2664, 2002 WL 109525 (S.D.N.Y. 2002).............................................19

*Levey v. Brownstone Investment Group, LLC*,
   590 F. App'x 132 (3d Cir. 2014) ...........................................................................18

*Modern Telecom Sys., LLC v. TCL Corp..*,
 C.A. No. 17–583–LPS–CJB, 2017 WL 6524526 (D. Del. Dec. 21, 2017) ............................15

*Morse v. Lower Merion Sch. Dist.*,
 132 F.3d 902 (3d Cir. 1997)...........................................................................................................9

*Motorola Mobility LLC v. Arnouse*,
 IPR2013-00010, Paper 27, 2013 WL 5970127 (P.T.A.B. Apr. 5, 2013)................................13

*Nami v. Fauver*,
 82 F.3d 63 (3d Cir. 1996) .............................................................................................................10

*North Star Innovations, Inc. v. Micron Tech., Inc.*,
 C.A. No. 17-506-LPS-CJB, 2017 WL 5501489 (D. Del. Nov. 16, 2017)..............................15

*Novartis AG v. Actavis, Inc.*,
 243 F. Supp. 3d 534 (D. Del. 2017)..............................................................................................8

*Pfizer Inc. v. Elan Pharma. Research Corp.*,
 812 F. Supp. 1352 (D. Del. 1993).............................................................................................8, 11

*Prima Tek II, LLC v. A-Roo Co.*,
 222 F.3d 1372 (Fed. Cir. 2000)...................................................................................................12

*Promos Techs., Inc. v. Samsung Elecs. Co. Ltd.*,
 C.A. No. 18-307-RGA, 2018 WL 5630585 (D. Del. Oct. 31, 2018).....................10, 14, 15, 16

*Propat Int'l Corp. v. RPost, Inc.*,
 473 F.3d 1187 (Fed. Cir. 2007)......................................................................................................2

*Robinson v. Johnson*,
 313 F.3d 128 (3d Cir. 2002)..........................................................................................................11

*Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*,
 113 F.3d 405 (3d Cir. 1997)..........................................................................................................10

*Sicom Sys., Ltd. v. Agilent Techs., Inc.*,
 427 F.3d 971 (Fed. Cir. 2005)......................................................................................................11

*Stone v. Williams*,
 970 F.2d 1043 (2d Cir. 1992)........................................................................................................18

*Vaupel Textilmashinen KG v. Meccanica Euro Italia S.P.A.*,
 944 F.2d 870 (Fed. Cir. 1991)......................................................................................................11

**Statutes**

17 U.S.C. § 507...............................................................................................................10, 18, 19

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)...........................................................................................1, 8, 11

Fed. R. Civ. P. 12(b)(6).............................................................................................. *passim*

Defendants LSI Corp., Broadcom Inc., and Avago Technologies U.S., Inc. (collectively "Defendants") move to dismiss Plaintiff TexasLDPC Inc.'s ("Plaintiff") claims for patent infringement for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and its claims for patent and copyright infringement for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The operative complaint is the First Amended Complaint, D.I. 9 (herein "Complaint" or "Compl.").

## I.     INTRODUCTION

Plaintiff is a licensing entity apparently controlled by a former employee of Defendant LSI Corp., Kiran Gunnam, and his wife, Annapurna Yarlagadda, that is now suing his former employer for patent and copyright infringement *based on work he performed for LSI while an employee*. Putting aside the obvious equitable and other issues raised by the brazen claims in the Complaint, Plaintiff does not even own the asserted patents, and lacks standing to maintain the patent infringement claims on its own. Texas A&M University System ("TAMUS") is the admitted owner of the asserted patents and copyrights. (Compl. at ¶ 31.) Plaintiff alleges it has an "exclusive license" from TAMUS to the asserted patents but does not allege that it possesses all substantial rights to the patents, as is necessary for standing. Rather, Plaintiff admits that its rights are subject to an undisclosed, and unidentified "pre-existing license," which defeats Plaintiff's ability to sue without joining TAMUS. The patent infringement counts (I – VI) should thus be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. In the alternative, Defendants request jurisdictional discovery on the threshold issue of standing prior to the case proceeding, including production of the licenses referenced in the Complaint.[1]

---

[1] Defendants notified Plaintiff of the threshold standing issue in the Complaint and requested production of the alleged exclusive license and the "pre-existing license" referenced therein, in the hopes of potentially avoiding motion practice on standing. Plaintiff has yet to produce these

In addition, Plaintiff's patent infringement claims should be dismissed for failing to state a plausible claim for relief for numerous reasons, including that the Complaint fails to sufficiently identify the Accused Products and allege how or why such products satisfy the limitations of the asserted patent claims.

Plaintiff's copyright infringement claims should similarly be dismissed for failing to plead a plausible claim for relief for two reasons.  First, the Complaint fails to identify the software that allegedly infringes the copyrighted works.  The copyrighted works were allegedly incorporated into Defendants' code by Dr. Gunnam from 2009-2010, but the Complaint fails to provide factual allegations identifying the allegedly infringing works, much less any factual allegations linking them to the software allegedly provided by Dr. Gunnam more than eight years ago.  Furthermore, the Copyright Act's three-year statute of limitations bars relief for copyright claims that accrued before December 12, 2015, and the Complaint pleads no facts to support a plausible claim for infringement after that time.  Second, the Complaint does not allege any facts supporting Plaintiff's claim that the copyrighted works are incorporated or used in relation to the Accused SandForce, Densbits, or Wi-Fi Accused Products, and thus the copyright infringement claims for at least these accused products should be dismissed for this additional reason.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff filed the original complaint on December 12, 2018, and its First Amended Complaint on January 11, 2019.  (D.I. 9.)  On January 25, 2019, the parties stipulated to extend to March 1, 2019, the deadline for Defendants' response to the First Amended Complaint.  (D.I. 25.)

---

agreements.  Defendants reserve the right to challenge Plaintiff's standing to sue even if TAMUS is joined, for example if the relevant license agreements reveal that Plaintiff is a bare licensee. *See Propat Int'l Corp. v. RPost, Inc.*, 473 F.3d 1187, 1193 (Fed. Cir. 2007).

III.   **STATEMENT OF FACTS**

A.   **Kiran Gunnam's Work for LSI and Connection to TexasLDPC**

Plaintiff's infringement theories are based on work performed by Kiran Gunnam, a former employee of Defendant LSI Corp. ("LSI"), on one of the very products accused of infringement, the McLaren LDPC decoder architecture developed at LSI in the 2008-2010 timeframe for use in certain LSI hard disk drive ("HDD") controllers.  (*Id.* at ¶¶46-65.)  The asserted patents all name Dr. Gunnam as a co-inventor, and the Complaint identifies him as an author of the TAMUS Copyrighted Works.

Dr. Gunnam worked at LSI from January 2008 through March 2011.  (*Id.* at ¶¶46, 65.) The Complaint conveniently alleges that, while employed at LSI, Dr. Gunnam supposedly told his colleagues that LSI would need a license from TAMUS to practice the subject matter he was developing for McLaren.  (*Id.* at ¶¶46-65.)  To be clear, however, none of the asserted patents had issued and none of the TAMUS Copyrighted Works were registered while Dr. Gunnam worked at LSI.  (*Id.* at ¶¶24-37.)  According to the Complaint, Dr. Gunnam continued to incorporate technology from then-pending patent applications into LSI's products until he resigned in March 2011.  (*Id.* at 46-65.)  The first Patent-in-Suit issued in January 2013, almost two years after Dr. Gunnam left LSI.  (*Id.* at ¶73.)  The first TAMUS Copyrighted Work was registered in February 2013.  (*Id.* at ¶33.)

According to the Complaint, in June 2015 Plaintiff entered into an "exclusive license," with TAMUS, granting Plaintiff the right to enforce the asserted patents and copyrights in its own name.  The Complaint does not attach the license as an exhibit, nor describe its specifics, and includes only a conclusory recitation of the rights purportedly conveyed.  (Compl. at ¶31.) The Complaint admits that Plaintiff's rights in the asserted patents are subject to a "pre-existing

3

license," which is not attached or described.  (*Id.* at ¶ 31.)  And Plaintiff has yet to provide either license in connection with Defendants' investigation of the standing issues raised herein.

Noticeably absent from the Complaint is any mention of the connection between Plaintiff and Kiran Gunnam.  Indeed, public records show that the California home of Dr. Gunnam and his wife is listed as the address for "Symbyon Systems," an admitted dba of Plaintiff (*Id.* at ¶ 2), and Dr. Gunnam's wife is listed as the "President and Director."[2]  These facts paint a troubling picture, *i.e.*, **it is Dr. Gunnam and his family who will presumably profit from successful prosecution of the claims asserted in Plaintiff's complaint against LSI that are based largely on his own conduct during the course of his employment by LSI.**  Needless to say, the entire premise of Plaintiff's Complaint raises serious equitable and other questions that will need to be explored if this case proceeds.

Also absent from the Complaint is mention of additional facts that bear on the threshold standing issue challenged by this motion.  By filing its Complaint, TexasLDPC is representing to the Court that it owns all substantial rights in the asserted patents such that it can enforce the patents without joining TAMUS, based on its 2015 license agreement.  However, more than a year *after* the alleged execution of that license, and in connection with obtaining one of the asserted patents, TAMUS represented to the U.S. PTO that it was "the real party in interest" with respect to the patent application, making no mention of Plaintiff's supposed interest.[3]  Plaintiff's Complaint makes no attempt to reconcile these contradictory representations.

---

[2] Exhibit A (Assessment Record for Symbyon Systems dated Feb. 7, 2019); Exhibit B at 1-3 (May 14, 2018 Letter of Assurance for Essential Patent Claims submitted by Annapurna Yarlagadda on behalf of TexasLDPC Inc. dba Symbyon Systems).

[3] Exhibit C at 3 ('950 patent application appeal brief).

B.      **Infringement Allegations in the Complaint**

Plaintiff alleges that Defendants infringe six patents[4] assigned to TAMUS (the "asserted patents") and three copyrighted works assigned to TAMUS, or a "subdivision" thereof (the "TAMUS Copyrighted Works"). (Compl. at ¶¶24-38.) Plaintiff alleges that TAMUS granted it an exclusive license to each of the asserted patents and the TAMUS Copyrighted Works on June 18, 2015. ("TAMUS License"). (*Id.* at ¶¶ 31, 38.) Plaintiff has not produced the TAMUS License or the pre-existing license.

The Complaint alleges that four general categories of Defendants' products infringe the asserted patents and TAMUS Copyrighted works: (1) Accused Hard Disk Controller Products, (2) Accused SandForce Products, (3) Accused Densbits Products, and (4) Accused Wi-Fi Products. (*Id.* at ¶100.) The Complaint does not define the "Accused Hard Disk Controller Products." The Accused SandForce and Densbits Products were acquired as part of corporate acquisitions by LSI *after* Dr. Gunnam resigned. The Complaint does not identify any Accused Densbits Products. (*Id.* at 94.) The Complaint identifies one SandForce Accused Product by name, the SandForce SF3700 flash controller family, and purports to accuse "other SandForce controllers with SHEILD technology." (*Id.* at 88.)

1.      **Infringement Allegations Against the Accused Hard Disk Controller Products**

The Complaint alleges that Dr. Gunnam began incorporating allegedly infringing technology into the architecture for an HDD controller codenamed "McLaren." (*Id.* at ¶¶46-50.) The patent infringement allegations rely on portions of several LSI presentations, all of which

---

[4] U.S. Patent Nos. 8,148,023 ("the '023 Patent"); 8,555,140 ("the '140 Patent"); 9,122,530 ("the '530 Patent"); 8,359,522 ("the '522 Patent"); 8,656,250 ("the '250 Patent"); 10,141,950 ("the '950 Patent).

appear to relate in some way to Dr. Gunnam's work on McLaren, to support its limitation-by-limitation allegations for the asserted patents.   (*Id.* at ¶¶106-114, 139-152, 169-181, 200-207, 225-252, 271-280.)[5]   The Complaint does not allege that Dr. Gunnam was involved in developing any products other than the McLaren architecture.   For example, the Complaint does not allege that Dr. Gunnam was involved in the design of the Spyder architecture, the generation that followed McLaren.   (*Id.* at ¶¶ 46-65.)

### 2.      Infringement Allegations Against the Accused SandForce Products

Dr. Gunnam was not employed at LSI when SandForce was acquired in January 2012. (*Id.* at 84), or in 2013 when the Complaint alleges technology covered by the asserted patents was incorporated into the "Accused SandForce Products."  (*Id.* at ¶88.)  The Complaint does not allege Dr. Gunnam had any involvement with the Accused SandForce Products, does not describe the Accused SandForce Products or reference any documents describing such products, and does not plead any factual basis supporting its reliance on McLaren-related documents to satisfy its pleading obligations with respect to this different product line.   LSI sold the Accused SandForce Products to Seagate in late 2014.  (*Id.* at 89.)  The Complaint does not allege that the Accused SandForce Products use or incorporate components of the TAMUS Copyrighted Works. (*Id.* at ¶88.)

### 3.      Infringement Allegations Against the Accused Densbits Products

Dr. Gunnam was similarly not employed at LSI when Broadcom acquired Densbits, Inc. in December 2015 (*Id.* at ¶91), or when the Complaint alleges technology covered by the asserted patents was incorporated into the "Accused Densbits Products."  (*Id.* at ¶¶93-94.)  The

---

[5] Defendants do not concede that the Complaint accurately describes the accused functionality of McLaren, or any other Accused Product.

Complaint does not identify a single Densbits product accused of infringement, and instead defines the "Accused Densbits Products" in conclusory fashion as simply "Densbits' SSD controllers" with "incorporated features of the McLaren LDPC decoder design that are covered by the TAMUS Patents-in-suit." (*Id.* at ¶94.) The Complaint does not allege that Dr. Gunnam had any involvement with the Accused Densbits Products, does not describe the Accused Densbit Products or reference any documents describing such products, and does not plead any factual basis supporting its reliance on McLaren-related documents to satisfy its pleading obligations with respect to this different product line. The Complaint does not allege that the Accused Densbits Products use or incorporate components of the TAMUS Copyrighted Works. (*Id.* at ¶94.)

### 4.    Infringement Allegations Against the Accused Wi-Fi Products

As an initial matter, Wi-Fi products are offered by Broadcom Corporation (*see id.* at ¶99), an entity not named as a defendant, which alone renders the Complaint deficient as to these products. The Complaint alleges the "Accused Wi-Fi Products" infringe only certain claims of two of the asserted patents, claims 62 through 84 of the '522 patent and claims 17 through 40 of the '250 patent. (*Id.* at 99.) The Complaint alleges that the Accused Wi-Fi Products infringe those claims based on the unsupported allegation that the Accused Wi-Fi Products practice the subject matter of a ***Broadcom*** patent, and comply with Wi-Fi IEEE standards 802.11ac and 802.11ad, with no further explanation or comparison of the subject matter of the Broadcom patent or the standards to the asserted claims. (*Id.* at ¶¶95-100.)

Moreover, with respect to the '522 patent, the allegations of infringement for the Accused Wi-Fi Products are based solely on claims 62-84, none of which is addressed in the actual infringement allegations for this patent, which are based on claims 85-97, another reason these allegations are facially defective. (*Compare id.* at ¶99 *with* ¶197-218.) The Complaint does not

allege that Dr. Gunnam had any involvement with the Accused Wi-Fi Products.  The Complaint does not allege that the Accused Wi-Fi Products incorporate components of the TAMUS Copyrighted Works.  (*Id.* at ¶99.)

## IV.   LEGAL STANDARDS

### A.   Dismissal for Lack of Standing Under Fed. R. Civ. P. 12(b)(1)

A court lacks subject matter jurisdiction over a cause of action if the plaintiff lacks standing to bring the cause of action.  *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1363 (Fed. Cir. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)).  A motion to dismiss under Fed. R. Civ. P. 12(b)(1) can either attack the sufficiency of the pleading or challenge the facts underlying plaintiff's assertion of standing.  *Novartis AG v. Actavis, Inc.*, 243 F. Supp. 3d 534, 538 (D. Del. 2017).  A facial attack on the pleading is evaluated under the same standard as Fed. R. Civ. P. 12(b)(6), *i.e.*, dismissal is appropriate if taking all material allegations as true, the plaintiff is not entitled to relief.  *Id.* at 538-39.

"Once a factual challenge has been raised, the plaintiff . . . has the burden of proof to establish . . . jurisdiction by a preponderance of the evidence."  *ACE Am. Ins. Co. v. Guerriero*, 738 F. App'x 72, 76 (3d Cir. 2018) (quoting *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 35 (3d Cir. 2018)).  In ruling on a motion to dismiss for lack of standing, the Court may thus "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Novartis AG*, 243 F. Supp. 3d at 539 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)); *see also Pfizer Inc. v. Elan Pharma. Research Corp.*, 812 F. Supp. 1352, 1357-58 (D. Del. 1993) (court may consider agreements referenced in the complaint without converting motion to dismiss to motion for summary judgment).

Whether a patent licensee has standing to sue in its own name is a question of law for the court, and the court must decide issues of fact necessary to determine standing.  *EMC Corp. v.*

*Pure Storage, Inc.*, 165 F. Supp. 3d 170, 174 (D. Del. 2016) (citing *Crayton v. Concord EFS, Inc. (In re ATM Fee Antitrust Litig.*), 686 F.3d 741, 747 (9th Cir. 2012)).   Patent owners, including assignees and exclusive licensees who have all substantial rights to the patent, may sue alone in their own right.   *See Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1345 (Fed. Cir. 2001) ("A grant of all substantial rights in a patent amounts to an assignment — that is, a transfer of title in the patent — which confers constitutional standing on the assignee to sue another for patent infringement in its own name.").

A party with less than all substantial rights may not bring an action enforcing the patent without joining the patent owner.   *See Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.*, 604 F.3d 1354, 1359 (Fed. Cir. 2010) ("[W]here an exclusive license transfers less than 'all substantial rights' in the patents to the exclusive licensee, the exclusive licensee may still be permitted to sue infringers, but the patent owner is an indispensable party who must be joined.").

### B.    Dismissal for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).   The Third Circuit implicates a two-step process.   "First, the factual and legal elements of a claim should be separated" and the Court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."   *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).   "Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"   *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).   The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported

conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

Claims for direct patent infringement require pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Merely pleading facts that are consistent with liability or stating legal conclusions is not sufficient." *Artrip v. Ball Corp.*, 735 F. App'x 708, 714 (Fed. Cir. 2018).  In addition, a complaint alleging infringement against multiple defendants must "adequately identif[y] specific infringing acts of each defendant." *Promos Techs., Inc. v. Samsung Elecs. Co. Ltd.*, C.A. No. 18-307-RGA, 2018 WL 5630585, at *4 (D. Del. Oct. 31, 2018) (quoting *Mayne Pharma Int'l PTY Ltd. v. Merck & Co.*, 2015 WL 7833206, at *3-4 (D. Del. Dec. 3, 2015)).  Furthermore, when infringement is alleged against a class of products, "the plaintiff must allege how the accused infringing class of products infringe the asserted patents." *Promos Techs,* 2018 WL 5630585, at *4.

To sufficiently plead copyright infringement, a plaintiff must plausibly allege: (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work.  *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002).  A copyright owner adequately alleges copying by asserting facts from which it could be plausibly concluded that a defendant is using software that is identical or so substantially similar that it is either a derivative work or must have been developed by reproducing protected elements of the original program.  *See id.* at 213–14.

### C.    Copyright Statute of Limitations - 17 U.S.C. § 507

The Copyright Act provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued."  17

U.S.C. § 507.  A limitations defense may be raised under Rule 12(b)(6).  *Robinson v. Johnson*,

313 F.3d 128, 135 (3d Cir. 2002).

## V.     ARGUMENT

### A.     Plaintiff Does Not Have Standing to Bring the Patent Infringement Claims

#### 1.     The Facts Pled in the Complaint Do Not Support Standing

On its face, the Complaint fails to allege that Plaintiff has standing to sue because it

admits the TAMUS License does not convey "all substantial rights" in the asserted patents.

*Alfred E. Mann*, 604 F.3d at 1458-59.   It is Plaintiff's burden to "clearly alleg[e] facts

demonstrating that he is a proper party to invoke judicial resolution of the dispute."[6]  *Pfizer*, 812

F. Supp. at 1356; *see also Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir.

2005) (Plaintiff's burden to establish standing).   Because Plaintiff failed to sufficiently plead

standing, its patent infringement claims should be dismissed.  Fed. R. Civ. P. 12(b)(1).

The sole relevant paragraph of the Complaint alleges:

> 31. Plaintiff is the exclusive licensee of each of the Patents-in-Suit pursuant to a
> license agreement between TAMUS and Plaintiff, executed on June 18, 2015 (the
> "TAMUS License Agreement").   Pursuant to the TAMUS License Agreement,
> Plaintiff has the exclusive and sole right **(subject a [sic] pre-existing license)** to
> practice the Patents-in-Suit, grant sub-licenses thereto, and sue and recover
> damages for the past, present, and future infringement of the Patents-in-Suit.

Compl. at ¶ 31 (emphasis added).

The most important rights in the "all substantial rights" analysis are the right to sue for

infringement, *Sicom*, 427 F.3d at 979, the right to exclusively practice the patent, *Abbott Labs. v.*

*Diamedix Corp.*, 47 F.3d 1128, 1132 (Fed. Cir. 1995), and the right to transfer.  *Prima Tek II,*

---

[6] Although Plaintiff alleges it is the "exclusive" licensee to the asserted patents, "whether a
transfer of a particular right or interest under a patent is an assignment or license does not depend
upon the name by which it calls itself, but upon the legal effect of its provisions."  *Vaupel*
*Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 873 (Fed. Cir. 1991).

*LLC v. A-Roo Co.*, 222 F.3d 1372, 1380 (Fed. Cir. 2000).  The Complaint admits that each of the conveyed rights critical to the analysis is limited in some undisclosed manner by an unidentified "pre-existing license," with no further description or explanation whatsoever.

Plaintiff's admission is fatal to its ability to proceed on its own.  For example, in *Acceleration Bay LLC v. Activision Blizzard, Inc.*, this Court found that a plaintiff-licensee could not proceed without the patent owner where the owner retained the right to sue within its field of use, a license to the asserted patents, and the license grant was subject to other pre-existing licenses.  2016 WL 3186890, C.A. No. 15-228-RGA (D. Del. June 3, 2016).  Similarly, in *Abbott Labs.*, a plaintiff-licensee did not have standing to sue on its own where the licensor retained a license to practice the asserted patents, the conveyance was subject to other pre-existing licenses, and the license placed limitations on the licensee's ability to sue for patent infringement.  47 F.3d at 1132.  In *Refac Int'l v. Mastercard*, the plaintiff-licensee did not have standing to sue without the patent owner because its rights were subject to pre-existing licenses with IBM and Hewlett-Packard.  758 F. Supp. 152, 155-57 (S.D.N.Y. 1991).  The *Refac* court explained that because the plaintiff-licensee could not exclude the pre-existing licensees from practicing the asserted patents, the plaintiff-licensee did not have all substantial rights.  *Id.*

> **2.    The Public Record of the Asserted Patents Contradicts Plaintiff's Assertions Regarding Standing**

The public record of the very patents asserted by Plaintiff further supports dismissal. Plaintiff's sole asserted basis for standing to enforce the asserted patents in its own name is the purported "exclusive license" obtained from TAMUS in 2015.  However, more than a year ***after*** the alleged execution of that license, ***TAMUS represented to the U.S. PTO that TAMUS, and***

**only TAMUS, was "the real party in interest"** during prosecution of the '950 patent.[7] (Exhibit C at 3.)   The PTO applies the same standing analysis used by district courts to its "real party in interest" requirement.   *Motorola Mobility LLC v. Arnouse*, IPR2013-00010, Paper 27, 2013 WL 5970127, at *2 (P.T.A.B. Apr. 5, 2013).   Thus, Plaintiff's assertion that it has standing to assert patent infringement in this action is directly at odds with TAMUS' representation to the PTO, and perhaps the reason Plaintiff is unable to plead the facts necessary to support standing.

### 3.   In the Alternative, Limited Discovery to Determine Whether Plaintiff Has Standing Is Appropriate

Plaintiff had two opportunities to either plead facts supporting its ability to sue on its own, or include the patent owner as a party, yet failed to do either in both its original and amended complaints, thereby warranting dismissal of the patent infringement claims.   At a bare minimum, Plaintiff's failure to plead facts concerning the specifics of the licenses at issue prevents the Court from applying controlling law to determine whether it may proceed to adjudicate the patent infringement claims in the absence of the patent owner.   Thus, in the alternative, Defendants request limited discovery to determine whether standing in fact exists. Plaintiff's admission that key rights to the asserted patents are subject to a pre-existing license and its failure to produce the relevant license agreements shifts the burden to Plaintiff to establish standing.   *See ACE Am. Ins.*, 738 F. App'x at 76.   Defendant should not be forced to litigate this matter unless and until the standing question is resolved.[8]

---

[7] The publicly recorded assignment TAMUS relied on for such representation is not limited to this one patent and applies to other of the asserted patents.   (Exhibit D at 3 ('950 assignment).)

[8] Because the factual standing analysis focuses on the nature and scope of the license agreement to determine whether Plaintiff was granted all substantial rights in the asserted patents, Defendants reserve the right to request additional briefing once Plaintiff produces copies of the relevant license agreements.   *See Alfred E. Mann*, 604 F.3d at 1361 (a plaintiff-licensee's standing focuses on the terms of the license and the intent of the parties to the license).

### B.    The Complaint Fails to State a Claim for Patent Infringement

The Complaint suffers from numerous pleading deficiencies that require dismissal of Plaintiff's patent infringement claims.  The Complaint asserts more than 100 claims from six patents against four broad and nonspecific categories of Defendants' products.  (*See* Compl. at ¶¶105-120, 138-153, 169-184, 199-207, 223-253); *see also* Complaint at Exs. A-F (asserted patents).)  The Complaint broadly defines the "Accused Products" that are the subject of each infringement count as including four sub-categories of products:  the "Accused Hard Disk Controller Products, the Accused Sand Force Products, the Accused Densbits Products, and the Accused Wi-Fi Products."  (*Id.* at ¶¶100, 104, 137, 168, 198, and 222.)

However, the Complaint nowhere defines the "Accused Hard Disk Controller Products," and is deficient for this reason alone.  Construing the allegations in their totality and in a light most favorable to Plaintiff, the Complaint at most names hard disk controllers using the McLaren architecture as the only hard disk drive products fairly identified and the only products for which any discussion of the actual claim limitations is provided.  (Compl. at ¶¶46-63.)

For the other three categories, the Complaint identifies only a single product by name, "the SandForce SF3700 flash controller family and other SandForce controllers with SHIELD technology."  (*Id.* at ¶88.)  It does not identify any Densbits or Wi-Fi product accused of infringement, leaving Defendants to speculate.  (*Id.* at ¶¶91-94, 100.)  Although pleading an exemplary product may satisfy Rule 12(b)(6), specific examples of at least one product from each class is required.  *See Promos Techs*., 2018 WL 5630585, at *4 (discussing exemplary product pleading standard).  Here, the Complaint attempts to accuse multiple, different and unidentified classes of products without providing specific examples for each class and therefore fails to sufficiently identify the Accused Products.

14

Furthermore, the Complaint is deficient because it fails to allege plausible facts as to why the discussion of various claim limitations in each of the counts for patent infringement – all of which are based solely on McLaren-related documents (the only architecture Dr. Gunnam is alleged to have worked on) – apply equally to other hard disk controllers, much less the two different types of products all lumped together under Plaintiff's overbroad "Accused Products" definition.  (*Id.* at ¶¶106-114, 139-152, 169-181, 200-207, 225-252, 271-280); *Promos Techs.*, 2018 WL 5630585, at *4 (dismissing claim for infringement against a broad class of unidentified DRAM products).  Here the Complaint fails to plead facts that plausibly connect the McLaren-related documents to anything but products with the McLaren architecture. Such conclusory assertions fail to state a claim.  *Promos Techs.*, 2018 WL 5630585, at *4; *see also North Star Innovations, Inc. v. Micron Tech., Inc.*, C.A. No. 17-506-LPS-CJB, 2017 WL 5501489, at *3 (D. Del. Nov. 16, 2017) (dismissing infringement claims for failing to provide factual explanation of how the accused products infringe).

The Complaint's patent infringement claims against the Accused Wi-Fi Products fail for the additional reason that they are based on multiple layers of wholly speculative allegations untethered to any actual product, and instead cite to a ***Broadcom*** patent unrelated to this suit and certain IEEE standards.  *See Modern Telecom Sys., LLC v. TCL Corp.*, C.A. No. 17–583–LPS–CJB, 2017 WL 6524526, at *3-4 (D. Del. Dec. 21, 2017) ("bald allegation" that accused product practiced "relevant Wi-Fi Standard" not enough to support a claim for patent infringement).  First, Plaintiff simply assumes that the unidentified Accused Wi-Fi Products practice an "LDPC decoder architecture" described in the Broadcom patent, which architecture allegedly practices certain asserted claims.  (Compl. at ¶96.)  However, putting this assumption aside, Plaintiff offers no explanation as to how the architecture allegedly satisfies any of the asserted claims.

Plaintiff similarly fails to relate the identified IEEE standards supposedly supported by the Accused Wi-Fi Products to any of the asserted claims.   (Compl. at ¶¶95-99.)

Moreover, the Complaint's infringement allegations against the Accused Wi-Fi Products are inconsistent.   On the one hand, the Complaint limits the infringement claims against the Accused Wi-Fi Products to the '522 and '250 Patents.   (*Id.* at ¶¶96-99.)  On the other hand, and without any factual basis, the Complaint includes the Accused Wi-Fi Products in the infringement allegations for all six of the Patents-In-Suit and all 100+ asserted claims in Counts I-VI.  Further, the allegations against the Accused Wi-Fi Products concerning the '522 Patent are limited to claims 62 through 84 (*Id.* at ¶¶96-99), but Count IV addressing infringement of this patent addresses a mutually exclusive set of claims (85-97).  (*Id.* at ¶¶195-218).

The Complaint is also fatally flawed because it fails to "adequately identif[y] specific infringing acts of each defendant."  *Promos Techs.,* 2018 WL 5630585, at *4.   Although the Complaint names Defendants Broadcom Inc.[9] and Avago Technologies U.S. Inc. in addition to LSI, the only specific acts discussed in the "Factual Background" are all attributed to LSI. (Compl. ¶¶ 41-100).   Yet each of the infringement counts is broadly directed to "Defendants" as a group. (Compl. ¶¶15-16 (identifying defendants and predecessor entities), 103, 136, 167, 197, 221, 268.) Worse yet, the boilerplate language of each count names "Defendants ***and/or*** the Broadcom Predecessor Entities" (emphasis added), a group of entities that are not even named as defendants.  The Complaint thus fails to identify the allegedly infringing acts attributable to each Defendant.

_____

[9] The Complaint acknowledges that Broadcom Inc. is merely a holding company (Compl. at ¶12.).

For all these reasons, the Complaint lacks plausible factual allegations of patent infringement, and should be dismissed for this additional reason.

### C.       The Complaint Fails to State a Plausible Claim for Copyright Infringement

#### 1.       The Complaint Fails to Plead an Adequate Factual Basis for Copyright Infringement

The Complaint fails to plead plausible claims for copyright infringement because it does not identify the allegedly infringing works, and further fails to plead facts showing Defendants copied the TAMUS Copyrighted Works.

Despite Dr. Gunnam's alleged involvement in the development of the allegedly infringing works while employed at Defendant LSI, the Complaint does not identify any of the allegedly infringing works.  Instead, the Complaint relies on the following conclusory assertion:

> Upon information and belief, LSI, and subsequently Broadcom Inc., continued to use the TAMUS copyrighted and derivative works and make copies of them, throughout all of their subsequent work for LDPC decoders used in HDD controllers.

(Complaint at ¶51.)

Each of the counts for copyright infringement similarly include a boilerplate, conclusory, and vague allegation of infringement in Defendants' "ongoing engineering and design of the Accused Products":

> Upon information and belief, Defendants and/or the Broadcom Predecessor Entities have violated Plaintiff's exclusive rights in the LDPC Decoder Program Work by, for example, continuing to use copies of the LDPC Decoder Program Work, or copies of works that are derivative works of the LDPC Decoder Program Work, in their ongoing engineering and design of the Accused Products, thereby violating Plaintiff's exclusive rights to (a) make reproductions of the LDPC Decoder Program Work or parts thereof, and (b) make derivative works from the LDPC Decoder Program Work.

(Complaint at ¶301.)

17

Such conclusory allegations do not support a plausible claim for relief and should be dismissed. *See Levey v. Brownstone Investment Group, LLC*, 590 F. App'x 132, 135-37 (3d Cir. 2014) (affirming dismissal of copyright infringement claims for failure to allege sufficient facts).

In *Levey*, the plaintiff developed software while affiliated with the defendant. More than five years later, Levey sued for copyright infringement alleging that his former company was still using the software and therefore infringed his copyrights. *Id.* at 134. Levey's case was dismissed because the complaint failed to provide a factual basis establishing defendant still used the allegedly infringing software years after Levey departed. *Id.* at 136. The Third Circuit also found that, because Levey's complaint gave no details regarding the allegedly infringing software, it was implausible to conclude that the accused system was infringing. *Id.* at 136-37.

The instant case is analogous to *Levey*. The Complaint pleads no facts to support the allegations that Defendants continued to use the TAMUS Copyrighted Works years after Dr. Gunnam's March 2011 departure from LSI. *Id.*; *see also Greenberg v. Scholastic, Inc.*, C.A. No. 16-6353, 2018 WL 1532850, at *3 (E.D. Pa. Mar. 28, 2018) (granting motion to dismiss where complaint failed to allege how or when certain photographs were infringed). For example, the SandForce was acquired in January 2012, and Densbits in December 2015, both long after Dr. Gunnam resigned. (Compl. at ¶84, 94.)

The Complaint's failure to plead facts supporting Defendants' unauthorized use of the TAMUS Copyrighted Works since December 2015 is fatal to its claim because allegations of copying from prior to this time are time barred under 17 U.S.C. §507(a). (Compl. ¶¶63-82); *William A. Graham Co.*, 568 F.3d 425, 433 (3d Cir. 2009) (a copyright infringement claim must be "commenced within three years after the claim accrued."); *Stone v. Williams*, 970 F.2d 1043,

1049-50 (2d Cir. 1992) ("Recovery is allowed only for those acts occurring within three years of suit and is disallowed for earlier infringing acts.") (citation omitted).[10]

Nor does the Complaint identify or provide any details regarding the allegedly infringing works to support the bare assertions of copyright infringement.  *See Lennon v. Seaman*, No. 99-CV-2664, 2002 WL 109525, at *6 (S.D.N.Y. 2002) (ordering more definite statement where pleading did "not enumerate particular instances of impermissible use.").  In particular, because Plaintiff fails to plead facts allowing for a comparison between any of the Accused Products and the TAMUS Copyrighted Works, it is implausible to conclude that the Complaint states a claim for relief.  *See Dam Things from Denmark v. Russ Berrie & Co., Inc.*, 290 F.3d 548, 561 (3d Cir. 2002).

### 2. The Complaint Does Not Allege Copyright Infringement by the Accused SandForce, Densbits, and Wi-Fi Products

The Complaint asserts copyright infringement broadly against the Accused Products, but asserts no facts that Defendants copied the TAMUS Copyrighted Works in relation to three of the four categories of Accused Products: the Accused SandForce, Densbits, and Wi-Fi Products. (Compl. at ¶¶301, 309, 317.)

For the Accused SandForce products, the Complaint only alleges:

On information and belief, LSI incorporated features of the McLaren LDPC decoder design that are derived from, and covered by, the *TAMUS Patents-in-suit* into SandForce Controllers by at least 2013, including at least the SandForce SF3700 flash controller family and other SandForce controllers with SHIELD technology ("the Accused SandForce Products).

(*Id.* at ¶88 (emphasis added).)

---

[10] Because the Complaint alleges LSI sold its SandForce line of products in 2014, 17 U.S.C. §507(a) provides an independent reason to dismiss *all* copyright infringement claims against the Accused SandForce Products as none of the alleged infringement took place within the limitations period.  (Compl. at ¶89.)

19

For the Accused Densbits Products, the Complaint only alleges:
On information and belief, Defendants and/or the Broadcom Predecessor Entities have incorporated features of the McLaren LDPC decoder design that are covered by the *TAMUS Patents-in-suit* into Densbits' SSD controllers (the "Accused Densbits Products") and sold them to customers.

(*Id.* at ¶94 (emphasis added).)

For the Accused Wi-Fi Products, the Complaint alleges:

Upon information and belief, Broadcom chipsets that support 802.11ac and 802.11ad (hereinafter the "Accused Wi-Fi Products") *incorporate designs from the '488 patent* and therefore infringe claims 68 to 84 of the '522 patent and claims 17 to 40 of the '250 patent.

(*Id.* at ¶99 (emphasis added).)  Thus, at most the Complaint alleges (in conclusory fashion) only that features covered by the *asserted patents* were incorporated into the Accused SandForce Products and Accused Densbits Products, not the TAMUS Copyrighted Works.  (*Id.* at 88, 94.) Similarly, the Complaint accuses the Accused Wi-Fi Products of patent infringement by virtue of their incorporation of designs from the '488 Broadcom patent.  (*Id.* at ¶99.)  Therefore, for this additional reason, Plaintiff's allegations of copyright infringement against the Sandforce, Densbits, and Wi-Fi products are thus not plausible and should be dismissed.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff's claims for patent and copyright infringement should be dismissed.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer A. Ward*

_____
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Jennifer A. Ward (#6476)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com
jward@mnat.com

OF COUNSEL:

Steven J. Rizzi
Ramy E. Hanna (DE # 5494)
KING & SPALDING LLP
1185 Avenue of the Americas, 35th Floor
New York, NY  10036
(212) 556-2100

*Attorneys for Defendants*

March 1, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 1, 2019, upon the following at the email addresses indicated below:

Gregory R. Booker, Esquire                              *VIA ELECTRONIC MAIL*
Ronald P. Golden III, Esquire
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE  19801
*Attorneys for Plaintiff TexasLDPC Inc.*

Lawrence K. Kolodney, Esquire                       *VIA ELECTRONIC MAIL*
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA  02210
*Attorneys for Plaintiff TexasLDPC Inc.*

David M. Hoffman, Esquire                              *VIA ELECTRONIC MAIL*
FISH & RICHARDSON P.C.
111 Congress Avenue, Suite 810
Austin, TX  78701
*Attorneys for Plaintiff TexasLDPC Inc.*

*/s/ Jennifer A. Ward*
_____
Jennifer A. Ward (#6476)